IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAMIAN POWELL, individually and on behalf of all others similarly situated, | |
| Plaintiff, | JURY TRIAL DEMANDED |
| vs. | |
| | DECEMBER 7, 2020 |
| RVNU, INC. a Delaware corporation, and MADRIVO MEDIA LLC, a Nevada limited liability company, | |
| Defendants. _____/ | |

## CLASS ACTION COMPLAINT

1.   Plaintiff, Damian Powell ("Plaintiff"), brings this action against Defendants, RVNU, Inc. and Madrivo Media LLC ("Defendants"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2.   This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3.   Defendant RVNU Inc. ("RVNU") is an online marketing company that engages in unsolicited marketing, harming thousands of consumers in the process.

4. Defendant Madrivo Media LLC ("Madrivo) is an online advertising and affiliate marketing company thatengages in unsolicited marketing, harming thousands of consumers in the process.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendants. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness

Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

7.  Venue is proper in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendants provide and market their services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.  Further, Defendants' tortious conduct against Plaintiff occurred within the State of Connecticut and, on information and belief, Defendants have sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendants to jurisdiction in the State of Connecticut.

## PARTIES

8.  Plaintiff is a natural person who, at all times relevant to this action, was a resident of New Haven County, Connecticut.

9.  Defendant RVNU, Inc. is a Delaware corporation. RVNU, Inc. directs, markets, and provides its business activities throughout the State of Connecticut.

10. Defendant Madrivo Media LLC is a Nevada limited liability company whose principal office is located at 121 E Warm Springs Rd., Las Vegas, Nevada 89119. Madrivo Media LLC directs, markets, and provides its business activities throughout the State of Connecticut.

## THE TCPA

11. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

12. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

13. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

14. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are

4

prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

15. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express *written* consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

16. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

17. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

18. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

19. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

20. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the*

6

*Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *Id*.

21. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

22. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

23. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL

7

6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the *text message*). (emphasis added).

## FACTS

24.     On or about July 25, 2020, Defendant RVNU sent the following telemarketing text message to Plaintiff's cellular telephone number ending in 6864 (the "6864 Number"):



25.     Upon information and belief, the subject text message was sent by RVNU at the direction and/or under the control of Defendant Madrivo.

8

26. The subject text message was sent for the benefit of Defendant Madrivo.

27. Upon information and belief, prior to transmitting the subject text message, Defendant RVNU consulted with Defendant Madrivo as to the content of the message, and received final approval to transmit the text message from Madrivo.

28. Upon information and belief, while Defendant RVNU was responsible for ultimately transmitting the text message, Defendant Madrivo always retained the right to change the content of the messages.

29. Upon information and belief, Madrivo directed RVNU to send the subject text message on behalf of Madrivo.

30. Upon information and belief, at all times relevant, Defendant Modrivo had the right to control Defendant RVNU's telemarketing activities.

31. Upon information and belief, Defendant Madrivo was, at all times relevant, aware of Defendant RVNU's marketing activities.

32. Upon information and belief, Defendant RVNU's acts complained of herein were known, consented to, and/or ratified by Defendant Madrivo. Further, Madrivo knowingly received and/or

9

retained monetary benefit from RVNU's unlawful telemarketing practices alleged herein

33. Defendants' text message was transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

34. Defendants' text message constitutes telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff auto insurance.

35. The information contained in the text message advertises automobile insurance that Defendants are hired to promote, which Defendants send to promote their own businesses.

36. Plaintiff received the subject text within this judicial district and, therefore, Defendants' violation of the TCPA occurred within this district. Upon information and belief, Defendants caused other text messages to be sent to individuals residing within this judicial district.

37. At no point in time did Plaintiff provide Defendants with express written consent to be contacted using an ATDS.

38. Plaintiff is the subscriber and sole user of the 6864 Number, and is financially responsible for phone service to the 6864 Number.

39. The impersonal and generic nature of Defendants' text message demonstrates that Defendants utilized an ATDS in transmitting the message.

40. The text message originated from telephone number 98673, a number which upon information and belief is owned and operated by or on behalf of Defendants.

41. The number used by Defendants is known as a "short code," a standard 5-digit phone number that enabled Defendants to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

42. Short codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a short code.

43. Specifically, upon information and belief, Defendants utilized a combination of hardware and software systems to send the text

messages at issue in this case. The systems utilized by Defendants have the capacity to store telephone numbers using a random or sequential generator, and to dial such numbers from a list without human intervention.

44. To send the text messages, Defendants used a messaging platform (the "Platform") that permitted Defendants to transmit thousands of automated text messages without any human involvement.

45. Upon information and belief, the Platform has the capacity to store telephone numbers.

46. Upon information and belief, the Platform has the capacity to generate sequential numbers.

47. Upon information and belief, the Platform has the capacity to dial numbers in sequential order.

48. Upon information and belief, the Platform has the capacity to dial numbers from a list of numbers.

49. Upon information and belief, the Platform has the capacity to dial numbers without human intervention.

50. Upon information and belief, the Platform has the capacity to schedule the time and date for future transmission of text messages.

51. Defendants' unsolicited text message caused Plaintiff actual harm, including invasion of Plaintiff's privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants' text messages also inconvenienced Plaintiff and caused disruption to Plaintiff's daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

52. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

53. Plaintiff brings this case on behalf of a Class defined as follows:

> **No Consent Class:** All persons who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendants, (2) using the same equipment utilized to text message Plaintiff, (3) for the purpose of promoting goods and/or services.

54. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

55. Upon information and belief, Defendants have placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

56. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

### COMMON QUESTIONS OF LAW AND FACT

57. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (1) Whether Defendants made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;
>
> (2) Whether Defendants can meet their burden of showing

     **that it obtained prior express written consent to make such calls;**

   (3) **Whether Defendants' conduct was knowing and willful;**

   (4) **Whether Defendants are liable for damages, and the amount of such damages; and**

   (5) **Whether Defendants should be enjoined from such conduct in the future.**

  58. **The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.**

  **TYPICALITY**

  59. **Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.**

  **PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

  60. **Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent**

counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

61. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

62. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be

counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

61. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

62. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not.  Additionally, individual actions may be

dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

63. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

64. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

65. Defendants – or third parties directed by Defendants – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

66. These calls were made without regard to whether or not Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express

consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

67.  Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

68.  Defendants knew that they did not have prior express consent to make these calls, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

69.  As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

70.  As a result of Defendants' violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for the following relief:**

a) **An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and counsel as Class Counsel;**

a) **An award of actual and statutory damages;**

b) **An order declaring that Defendants' actions, as set out above, violate the TCPA;**

c) **A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;**

d) **An injunction requiring Defendants to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Classes;**

e) **An injunction prohibiting Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining, recipient's consent to receive calls made with such equipment; and**

f) **Such further and other relief as the Court deems necessary and/or as to which the Plaintiff and class plaintiffs are entitled.**

# JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury as to all issues so triable.

       Respectfully submitted,

       LAW OFFICES OF GARRETT S. FLYNN, LLC

       By     /s/ Garrett S. Flynn
       Garrett S. Flynn (#ct22071)
       10 North Main Street, Suite 221
       West Hartford, CT  06107
       P: (860) 676-3148 F: (860) 674-0085
       gsf@flynn-law.com

       *Counsel for Plaintiff and the Class*

Of counsel (motions for *pro hac vice* will be filed):

Shamis & Gentile, P.A.
/s/ Andrew J. Shamis
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299

/s/ Ignacio J. Hiraldo
IJH Law
Ignacio J. Hiraldo, Esq.
Florida Bar No. 0056031
1200 Brickell Ave Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.496.4469